TIME-SAVER CO. v. STAMFORD TRUST CO.

SAME v. PEQUONNOCK NAT. BANK.

(Circuit Court, D. Connecticut.   November 30, 1908.)

Nos. 1,230, 1,231.

PATENTS (§ 328*)—ANTICIPATION—ACCOUNT BOOKS.
    The Wever and Parmerter patent No. 632,769, and the Rand patent No. 746,157, relating to account books, are both void for anticipation.
    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.  On final hearing.

Roberts, Roberts & Cushman, for complainant.
Emerson R. Newell, for defendant.

PLATT, District Judge.   This is a patent suit in the usual form, based upon two patents alleged to be capable of conjoint use, viz., Wever & Parmerter, No. 632,769, and Rand, No. 746,157, relating to account books and ledgers.

On March 16, 1908, at the beginning of the rebuttal testimony, complainant gave notice that it would dismiss the bill of complaint so far as it charges infringement of the Wever & Parmerter patent, and proceeded at the hearing upon the assumption that the only open issue was the validity of the Rand patent and its infringement.   Upon the record, however, the case remains intact, the validity and infringement of both patents being at issue, and, even if complainant had perfected the notice given, the validity of the Wever & Parmerter patent would still remain at issue.

A cursory examination of the proofs prior to rebuttal will disclose the reason for complainant's action.   The defendant's proofs thoroughly demolish the Wever & Parmerter patent.   The spark of invention which carried that patent through the office had been exercised by others long before the application of the patentees.   It would be a perversion of justice to stop at the point of finding that the Wever & Parmerter patent is not infringed.   It is clearly invalid, and the decree which will follow this opinion must say so.   Having done that, we are brought at a bound to the real contention, which circles around the Rand patent.

At the threshold the court desires to express sympathy for the complainant.   On the face of it, Mr. Rand was entitled to some consideration because of his patent.   The complainant under that patent has acquired a large clientage, and the real defendants have taken the benefit of what the Patent Office professed to give to Mr. Rand.   If the rights of the patentee were as clear as counsel for the complain-

ant claims them to be, if the defeat of the patent were a matter of serious doubt, it would have been better for the real defendants to pay tribute to the owner of the patent. In the case at bar, however, they have apparently undertaken to maintain what they conceived to be their manifest right. I cannot believe that they are wanton and malignant trespassers. To my mind, the gist of the case lies in the fact that the Patent Office ought not to have granted Rand his patent, in view of the disclosure contained in the Wever & Parmerter specifications. That grant loses its prima facie force, because, upon careful scrutiny, the oversight on the part of the examiner who had the matter in charge is so obvious. I am of the positive opinion that the disclosure anticipates fully the principle which, it is insistently claimed, furnishes the novelty to Rand's claims of invention, and I cannot blame intelligent gentlemen for taking advantage of so plain a situation. The cause of the oversight is unimportant, but it was probably due to the fact that no drawing was furnished to illustrate the alternative construction which we are now about to briefly consider.

In the Wever & Parmerter patent, Fig. 3 shows Saturday's balance column at the extreme left of each page, as in Rand, but with the name column between this balance column and the transactions of Monday; but in lines 95 to 101 of the specifications, in referring to Fig. 3, the patentees say that "the first balance column and transactions of the first day may be placed before the name column without varying the principle of our invention." When Fig. 3 of Wever & Parmerter patent is treated as suggested in this disclosure, taking into account the general purpose of that patent, we find the exact thing which is illustrated in Fig. 2 of the Rand patent. The disclosure is clear enough to enable one with very moderate skill to construct a bank ledger which will meet the spirit of the Rand claims 1, 2, and 3, and, unless the words "midway," "center," "middle," and "meet" are to be construed with hair-line accuracy, it will also meet the terms of those claims.

The complainant attempts to dodge the force of the disclosure by putting forth divers contentions. It is urged that "transactions of the first day" cannot be understood to refer to Monday's balance column, because a balance is not a transaction. It seems to me that the purpose of a ledger account is to set forth in plain arithmetical terms the relations between a customer and the bank. The transactions of the day, to be complete, ought to show what happened to the account during the day, and how it was left at the close of the day. Its condition at the close of the day is just as much a transaction with the customer as its variations during the day.

It is also claimed that in following the disclosure one might carry the crease much further to the right, because it would still be beyond the transactions of the first day; but one cannot imagine a man of ordinary skill doing such a thing as that, for, in such event, the page when turned back would cover the name column and thus defeat the object sought to be obtained.

It is also persistently contended that the crease must be "double acting." Rand does not call attention to that function of his crease,

but, assuming that function to be an inherent feature of his construction, it must be remembered that Wever & Parmerter told us about a vertical crease, or "line of perforations," and such a crease as theirs would have the same inherent double acting or hinge function.

It is said to be an advantage under the patented construction that the names and balances are in alignment, so that it is easy to carry the appropriate figures forward, but I can see no trouble in doing that under the alternative construction of Wever & Parmerter. The crease being vertical, the lines must be opposite each other, and they would be near enough together so that the eye could easily follow straight across the open gap between the leaves.

Complainant's efforts to escape the force of the alternative disclosure are not persuasive. If claims 4 and 5 can be differentiated from the alternative disclosure of Wever & Parmerter, they would be outside of the invention which is insisted upon, viz., a centrally located, double-acting crease capable of being so treated as to facilitate the transferring of balances from one week to the next, because, when the name column is placed as suggested in those claims, it would be covered up when the leaf is folded back, and the tired bookkeeper could rest from his labor, because there would be no work in sight for him to do. Claims 4 and 5, then, do not present a combination of elements which will do anything, and are therefore unpatentable.

These observations have been made with a running pen, and much more might be said, but the conclusion of the whole matter is that, when Rand went to the Patent Office with his application, he took nothing there which was new, and, but for the carelessness of a minor official, he would have come away empty-handed.

Both patents ought to be found invalid, and the bill dismissed, with costs. So ordered.